UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES RAY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-1129-X |
| | § | |
| EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC., TRANS UNION | § | |
| LLC, and WAKEFIELD AND | § | |
| ASSOCIATES, LLC, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wakefield and Associates, LLC's (Wakefield) amended motion for summary judgment (Doc. 54) and Plaintiff James Ray's (Ray) motion to deny Wakefield's motion for summary judgment. (Doc. 57). Having carefully considered the motions, the Court **DENIES** Wakefield's motion for summary judgment and **DENIES** Ray's motion to deny summary judgment.

In short, the Court determines that there is a genuine dispute to material fact regarding whether Wakefield's investigation of Ray's debt satisfied its Fair Credit Reporting Act (FCRA) obligations and whether Wakefield attempted to collect the debt in violation of the Fair Debt Collection Practices Act (FCDPA).

### I. Factual Background

On June 25, 2021, Ray's child was transported by Air Evac EMC, Inc.'s (Air Evac) air ambulance after a car accident. The child was covered under Ray's Cigna Health and Life Insurance Company (Cigna) health insurance plan. Air Evac

invoiced Cigna the ride, which totaled $56,684.00. (Medical transports always charge surge pricing.)

Cigna sent Ray the Explanation of Benefits (the "EOB") stating it received a claim for the out-of-network service Air Evac provided to Ray's child. The EOB stated Cigna was billed $56,684.00 to which it paid $43,034.00 with the following description:

> This is the portion of your bill that's not covered by your plan. You may or may not need to pay this amount. See the Notes section on the following pages for more information. The total amount of what is not allowed and/or not covered is $13,650.00 of which you owe $0.00.

The notes section read:

> A0 - HEALTH CARE PROFESSIONAL: THE PATIENT IS NOT LIABLE AND SHOULD NOT BE BILLED IF YOU ACCEPT THE ALLOWANCE AMOUNT. CALL CIGNA AT THE NUMBER ON THE CIGNA ID CARD WITH QUESTIONS. CUSTOMER: IF YOU RECEIVE A BILL MORE THAN "WHAT I OWE" CALL CIGNA.

In November 2021, Air Evac confirmed receipt of Cigna's $43,034.00 payment. Air Evac employees reached out to Ray about the remaining balance of $13,650.00, requesting a copy of Ray's EOB to ensure proper posting of Cigna's payment, and appealing the remaining balance to Cigna on Ray's behalf. Cigna denied Air Evac's appeal and upheld its original payment decision. Air Evac, which had not contracted with Cigna, asserted that it was not obligated to follow Cigna's reimbursement policies and subsequently billed Ray for the remaining $13,650.00 balance Cigna refused to pay.

On August 1, 2023, Air Evac contracted with Wakefield to collect the remaining balance from Ray. On August 3, 2023, Wakefield sent Ray an initial notice, and a

duplicate notice was inadvertently mailed to Plaintiff's ex-wife, Michelle Ray. Ray

opened the letter addressed to his ex-wife and informed her of its contents.

Ray disputed the account with Experian and TransUnion—two major credit

reporting agencies who are also parties to this case—which transmitted Ray's account

to Wakefield for debt collection. In his dispute, Ray maintained that Cigna paid the

account in full per his EOB and that Air Evac's billing was improper. He filed this

lawsuit alleging, among other things, that Wakefield violated (1) the FCRA for not

conducting a reasonable investigation of the account and publishing inaccurate credit

information; and (2) the FCDPA for using false, deceptive, or misleading

representation in relation to collection of the account.

## II. Legal Standards

### A. Subject Matter Jurisdiction

To bring a case before a federal court, a plaintiff must have standing—the

"bedrock constitutional requirement" that restrains the judiciary and preserves

separate of powers.[1] The Supreme Court has outlined the requirements of standing

under the Constitution:

> First, the plaintiff must have suffered an injury in fact—an invasion of
> a legally protected interest which is (a) concrete and particularized and
> (b) actual or imminent, not conjectural or hypothetical. Second, there
> must be a causal connection between the injury and the conduct
> complained of—the injury has to be fairly traceable to the challenged
> action of the defendant, and not the result of the independent action of
> some third party not before the court. Third, it must be likely, as

---

[1] *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024) (cleaned up);
*see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) ("A regime where Congress could freely
authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would violate Article
III but also would infringe on the Executive Branch's Article II authority.").

opposed to merely speculative, that the injury will be redressed by a favorable decision.[2]

An injury in fact "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."[3] But statutes "cannot dispense with the injury requirement altogether."[4] "Put differently, the deprivation of a right created by statute must be accompanied by some concrete interest that is affected by the deprivation."[5] An injury must also be particularized, which the Supreme Court has defined to mean "it must affect the plaintiff in a personal and individual way."[6]

## B. Summary Judgment

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[8] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[9]

---

[2] *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).

[3] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (cleaned up).

[4] *Laufer v. Mann Hospitality, L.L.C.*, 996 F.3d 269, 272 (5th Cir. 2021).

[5] *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 529 (5th Cir. 2016) (cleaned up).

[6] *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up).

[7] FED. R. CIV. P. 56(a).

[8] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[9] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (cleaned up).

## III. Analysis

This case turns on whether Wakefield conducted a reasonable investigation under the FCRA regarding Ray's disputed account and whether Wakefield violated the FCDPA by reporting inaccurate or misleading credit information. Both issues illicit genuine disputes of material fact.

### A. Standing

The Court accepts Wakefield's argument that Ray does not have standing under Article III for his 15 U.S.C. § 1692c(b) claim. This specific claim arises from Wakefield sending a duplicate letter containing Ray's debt information addressed to Ray's ex-wife; however, Ray intercepted the letter because it was sent to his home address.[10] Although Wakefield's conduct violated the statute by communicating Ray's debt information to a third party, Ray has failed to demonstrate a *concrete injury in fact* sufficient to confer standing.[11] As the U.S. Supreme Court affirmed, "only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant in federal court."[12] Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.[13] Here, Wakefield's technical violation of the statute, without any concrete, real-world injury to Ray, falls within the limitation articulated in precedent. Ray's alleged damages do not

---

[10] Doc. 8 at 4–5.

[11] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

[12] *Id.*

[13] *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 332 (7th Cir. 2019).

establish an injury-in-fact that is fairly traceable to Wakefield's conduct and therefore does not satisfy the standing requirements under Article III.[14]

Moreover, the record demonstrates that Ray's asserted injuries arise not from Wakefield's communication in violation of 1692c(b), but from his own voluntary actions.[15] Ray himself opened a letter addressed to his ex-wife and then chose to share its contents with her.[16] Absent his unilateral conduct, his ex-wife would never have been aware of the letter's existence. Consequently, any alleged emotional distress or embarrassment resulting from her awareness of the letter cannot constitute a concrete, particularized injury under *TransUnion*, as Ray provides no evidence of such damages from his own self-inflicted conduct.[17] Furthermore, any purported adverse impact on Ray's credit score or loss of credit opportunity is not traceable to his ex-wife's receipt of the letter's contents but rather to an entirely different statutory claim. Accordingly, Ray has failed to establish that his alleged harms are both concrete and causally connected to Wakefield's statutory violation.

## B. FCRA and FCDPA Obligations

Ray asserts that Wakefield failed to fulfill its statutory duty by neglecting to conduct a proper investigation required by the statute.[18] Ray supports his argument

---

[14] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[15] Doc. 55, Ex. F at 10 (Ray's deposition testimony of his voluntary sending of the letter to his ex-wife).

[16] *Id.*

[17] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021); *see also* Doc 55, Ex. F at 11–12 (Ray's testimony that his ex-wife said "nothing really" about the letter and its contents and they have not discussed it further).

[18] 15 U.S.C. § 1681s-2(b).

by providing evidence that Wakefield neglected to review essential documents, such as the EOB, in the investigation. These facts are material because they directly bear on whether Wakefield's investigation satisfied the FCRA's investigation requirement for furnishers of information upon notice of dispute.[19] Furnishers of debt must investigate disputes involving "objectively and readily verifiable" information.[20] Wakefield's alleged failure to consider these documents during the investigation makes the adequacy of its procedures a genuine dispute of material fact.

Furthermore, the same disputed facts are material under the FDCPA, sections 1692e(2) and 1692e(8). If the $13,650.00 balance was not owed, Wakefield's continued debt collection efforts could constitute a false or misleading representation of the amount or legal status of a debt in violation of the statute.[21] Wakefield argues that the dispute concerns the legal validity of the EOB rather than the adequacy of its investigation. Ray, however, maintains that the issue is not only the EOB's legal effect but Wakefield's failure to reasonably verify the information it reported.

Because there is a dispute over the adequacy of Wakefield's investigation and the accuracy of the reported debt, summary judgment is not appropriate.

### C. Ray's Motion to Deny Wakefield's Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, any party may move for summary judgment when there is no genuine dispute as to any material fact and the movant is

---

[19] 15 U.S.C. § 1681s-2(b).

[20] *Roberts v. Carter-Young, Inc.,* 131 F.4th 241, 251 (4th Cir. 2025).

[21] 15 U.S.C. § 1692e.

entitled to judgment as a matter of law.[22]   Under Local Rule 56.2(b), a party is

permitted to file a motion for summary judgment.  Further, the Court's Scheduling

Order in this case set a deadline of November 28, 2025 for the parties to file a motion

for summary judgment.[23]  An opposing party may file a response in opposition to a

motion for summary judgment.[24]

Ray filed what is styled as a "Motion to Deny Wakefield's Motion for Summary

Judgment."[25]  This procedural invention finds no support in the Federal Rules of Civil

Procedure, the Local Rules, or even the broadest notions of common sense.  The rules

provide for a *response in opposition* to a motion for summary judgment—not a

separate motion purporting to "deny" the other side's filing.  In short, Ray's

submission is not a motion at all, but a misguided attempt to relitigate the mere right

of the opposing party to seek summary judgment.

The right to move for summary judgment is not some optional courtesy

extended by opposing counsel—it is a core procedural mechanism rooted in due

process and the adversarial system.[26]   To "move to deny" that right is to

misunderstand the very structure of federal practice.  If Ray disagrees with

Wakefield's motion, the federal rules provide a simple remedy: file a response, cite

the record, and identify any genuine dispute of material fact.  What the rules do *not*

---

[22] FED. R. CIV. P. 56(a).

[23] Doc. 53 at 1.

[24] Local Rule 7.1(e).

[25] Doc. 57.

[26] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

permit is denying Wakefield's right to file a motion for summary judgment.

Accordingly, Wakefield properly exercised its right to move for summary judgment. Ray's "motion to deny" should be treated for what it is—a motion to deny due process.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Wakefield and Associates LLC's amended motion for summary judgment (Doc. 54) and **DENIES** James Ray's motion to deny Wakefield's motion for summary judgment (Doc. 57).

**IT IS SO ORDERED** this 30th day of October, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE